UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VERITY GLOBAL SOLUTIONS LLC** § § | | |
| **Plaintiff,** § § | | |
| v. § § | Civil Action No. 24-cv-63 | |
| § § | | |
| **GENWORKS GLOBAL SOLUTIONS, LLC AND CHETAN PATEL** § § § § | | |
| **Defendants.** § § | | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

Plaintiff Verity Global Solutions LLC ("Plaintiff" or "Verity") files this Original Verified Complaint (the "Complaint") against Defendants GenWorks Global Solutions, LLC ("GenWorks") and Chetan Patel ("Patel," and together with GenWorks, collectively, the "Defendants") and would respectfully show the Court as follows:

### I.   THE PARTIES AND SERVICE

1. Plaintiff is a privately held limited liability company organized under the laws of the State of Texas, with its principal office in the State of Texas.

2. Defendant Chetan Patel ("Patel") is resident of the State of Texas, who may be served with process at 1213 Cottonwood Valley Drive, Irving, TX 75038.

3. Defendant GenWorks is a limited liability company organized under the laws of the State of Texas, with its principal office in the State of Texas. GenWorks may be served with process through its registered agent, Chetan Patel, 1213 Cottonwood Valley Drive, Irving, TX 75038.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this suit because Verity is pursuing a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), a federal claim, which supports federal question jurisdiction.

5. This Court has personal jurisdiction over Patel because he is a resident of the State of Texas, because he has purposely availed herself of the privileges and benefits of conducting business in Texas, by entering into contracts which form the basis for several of the claims at issue in this case in the State of Texas, and because he has, among other things, committed and conspired to violate statutes and commit torts and other unlawful acts described herein, which are the subject of this suit, in whole or in part, in the State of Texas.

6. This Court has personal jurisdiction over GenWorks because it is organized under the laws of the State of Texas and because it has availed itself of the privileges and benefits of conducting business in Texas.

7. Venue is appropriate in federal court in San Antonio, Texas under the general venue statute because it is the county in which all or a substantial part of the events or omissions giving rise to the claims outlined herein occurred.

## III. INTRODUCTION

8. This case involves a knowing and intentional violation of Patel's fiduciary duty, a breach of Patel's employment contract with Plaintiff, and the misappropriation of trade secrets by Patel, all in connection with his founding and operation of GenWorks. Plaintiff respectfully requests that the Court enter a temporary restraining order and preliminary injunction to enforce the terms of the contractual obligations Patel has violated and to prevent the use and/or disclosure of confidential information and materials belonging to Verity in Defendants' possession. Plaintiff seeks a temporary restraining order, a preliminary injunction, a permanent

injunction, damages, and attorney's fees as a result of actionable conduct on the part of Patel, Plaintiff's former Chief Operating Officer ("COO"), and GenWorks. Contrary to his fiduciary duties, as well as the terms of his employment contract, which prohibited him from directly or indirectly soliciting or performing services for Plaintiff's customers or employees of Verity and disclosing or using confidential information, Patel formed a new company, GenWorks, *while still serving as COO of the Plaintiff*. Additionally, Patel recruited several high-level executives of one of Plaintiff's clients – GenHome Mortgage Corporation – as members of the newly-founded GenWorks, in addition to a fellow Verity executive employee. Not only that, but GenWorks siphoned off GenHome Mortgage Corporation's business from the Plaintiff. To preserve the *status quo*, prevent further misappropriation of trade secrets and violations of Patel's fiduciary duties and his employment contract with the Plaintiff, and to recover damages relating to any past violations, Plaintiff respectfully requests that the Court grant the relief requested in this Petition.

## IV.   FACTUAL ALLEGATIONS

### A.   Background Concerning Plaintiff's Business

9.   Plaintiff is a leading provider of business process outsourcing solutions for companies in the mortgage industry. Verity supports tasks associating with the origination, servicing, and purchasing of loans. Plaintiff has a global team of experts to provide unparalleled service to its clients that allows them to close, sell, and service loans in an expeditious manner.

### B.   Plaintiff's Confidential Information and Trade Secrets

10.   To secure a competitive advantage in the marketplace, Plaintiff has spent substantial time, money, expertise, and resources to develop confidential and proprietary procedures, forms, documents, pricing information, protocols, and information relating to their services and their clients. Plaintiff has also taken reasonable steps to maintain the confidentiality

of such information. Plaintiff derives substantial economic value from keeping the above-described information confidential, as it prevents competitors in the marketplace, such as GenWorks, from unfairly using such information without undertaking a commensurate investment.

**C.    Patel Worked as Verity's COO**

11.    On June 28, 2020, was offered the position of COO of Plaintiff's organization. On June 29, 2020, Patel accepted and signed the offer (the "Agreement"), which is attached hereto as **Exhibit A**.[1] Patel worked as Plaintiff's COO from July 2020 through October 2023.

12.    The Agreement clearly and unambiguously states that Patel, during his employment, was not authorized to engage in "any other employment, occupation, or business enterprise" while working for Plaintiff without Plaintiff's written consent. Exhibit A. Patel never asked for and never received this permission.

13.    Additionally, the Agreement states that, in signing the document, Patel agreed "not to contact directly or indirectly any of Mentco or Verity's existing customers for a period of 24 months" after the end of his employment. Exhibit A.

14.    The Agreement further states that during his employment and "ending 12 months after the last day of your employment (the Restricted Period) you may not, directly or indirectly, hire, solicit, or encourage any Person employed by Mento and Verity to join you as a partner, agent, employee, independent contractor or otherwise in a business venture or other business relationship." Exhibit A.

---

[1] The Agreement states that it was issued by Mentco Inc., a business affiliated with Verity. This organization was a predecessor to Plaintiff and was incorporated prior to Plaintiff's incorporation. Mentco Inc. was established to be able to provide benefits to early employees of Plaintiff before Plaintiff was officially incorporated. For the avoidance of doubt, when describing Patel's employment with Plaintiff, the term "Plaintiff" includes Mentco Inc.

4

15. The Agreement also stated that Patel was authorized to ask Verity for permission to engage in solicitation of its customers or employees prior to the end of the applicable restricted period. Exhibit A. Patel neither asked for nor received such permission.

16. In his position as COO, Patel was responsible for the daily operations of Plaintiff, including managing personnel, company resources, and logistics. As a senior manager in this position, Patel had access to the most sensitive, confidential, and valuable information in Plaintiff's possession. Patel, in this position of trust, was required to keep confidential all of Plaintiff's confidential and proprietary documents and information, as well as abide by certain restrictive covenants.

17. Patel submitted his resignation letter on July 6, 2023 and indicated that he intended to resign on August 31, 2023, but he remained with Plaintiff through the end of October 2023.

D. **Patel Filed GenWorks' Formation Documents with the Texas Secretary of State While Still Employed as Plaintiff's COO**

18. Patel created competitor GenWorks and filed a Certification of Formation for a Limited Liability Company with the Texas Secretary of State in the name of GenWorks Global Solutions, LLC on June 13, 2023, while he was still serving as the COO of Plaintiff. *See GenWorks Global Solutions, LLC Certificate of Incorporation*, attached hereto as **Exhibit B**.

19. In this Certificate of Formation, Patel is listed as a Managing Member of GenWorks, along with Ashok Radhakrishnan, Christopher D'Auria, and Gregory Reed.

20. Christopher D'Auria is the President and Chief Executive Officer of GenHome Mortgage Corporation, a former client of the Plaintiff, until the founding of GenWorks, and currently serves as a Managing Member of GenWorks.

21. Ashok Radhakrishnan is the former Executive Vice President and Chief Delivery Officer of the Plaintiff and currently serves as a Managing Member of GenWorks.

22. Greg Reed is the President and Chief Executive Officer of GenWay Home Mortgage Corporation and currently serves as a Managing Member of GenWorks.

E.  **GenWorks is a Direct Competitor of the Plaintiff**

23. GenWorks competes directly with the Plaintiff. GenWorks operates in the same industry and competes for the same pool of clients.

24. GenWorks operates in the mortgage industry and provides many of the same services as Plaintiff, including support with the origination of mortgages, quality control services, and underwriting support. *See Plaintiff Website – Services Listing*, attached hereto as **Exhibit C**; compare with *GenWorks Website – Services Listing*, attached hereto as **Exhibit D**.

F.  **Patel's Theft of Verity Trade Secrets**

25. On July 17, 2023, Patel shared statements of work between Verity and several of its customers with Greg Reed, the President and Chief Executive officer of GenWay Home Mortgage Corporation and a fellow Managing Member of GenWorks.

26. Following Patel's resignation, and in connection with GenWorks launching its business, Verity engaged a forensic specialist, Crowe LLP, to perform a forensic evaluation of Patel's Verity-issued computer.

27. Crowe's analysis revealed, among other things, that Patel sent numerous emails from his Verity email address to a personal email account controlled by him.

28. These emails include the following:

a. An attachment labeled "HMDA Review Check Points," which is a checklist that outlines Verity's mortgage servicing processes, emailed by Patel to a personal email account on July 10, 2023;

b. An attachment labeled "FUD Call Monitoring Process," which is a checklist for Verity's call monitoring process, emailed by Patel to a personal email account on July 10, 2023; and

c. An attachment titled "SOWs[1072259].zip," which contains statements of work between Verity and several customers, including GenHome Mortgage Corporation, emailed by Patel to a personal email account on July 17, 2023.

29. Each of these files contain highly confidential and proprietary Verity information, and includes statements of work with sensitive customer information, including pricing, as well as Verity's standard operating procedures for handling its business operations.

30. Patel had no legitimate Verity-related business purpose for accessing these files and information and emailing the same to a personal email account.

31. Patel did not have the consent of Verity to transmit this information to a personal email account in connection with his departure to work for GenWorks.

G. **Patel Serves as an Officer and Director of Another Company in Addition to GenWorks**

32. Additionally, Plaintiff has recently learned that during Patel's employment with Verity, he served as the Vice President of Operations and as a Director another company – RNRC Enterprise, Inc., a Texas corporation. *See RNRC Enterprise, Inc. – Texas Franchise Tax Public Information Reports – 2020 – 2022*, attached hereto as **Exhibit E**.

33. Per the company's website, RNRC Enterprise, Inc. provides call center agents, business process outsourcing, and virtual office assistants. *See RNRC Enterprise, Inc. – About Us Webpage*, attached hereto as **Exhibit F**.

34. RNRC Enterprise, Inc.'s outsourcing and other services compete with those offered by Verity.

## V.   CAUSES OF ACTION

### COUNT ONE – BREACH OF FIDUCIARY DUTY
*(against Patel)*

35. Plaintiff incorporates the foregoing paragraphs as if specifically restated at length herein.

36. Patel, as a high-ranking employee of Verity, owed fiduciary duties to Verity, including a duty to act for the benefit of Verity, to deal fairly and honestly with Verity, to act with strict integrity, and to comply with the duties of good faith, full disclosure, and candor.

37. Patel clearly violated his fiduciary duties when he started a competing business – GenWorks – while still employed as Plaintiff's COO. It should be self-evident that establishing a business to compete with Plaintiff, while still employed as a C-suite executive, does not benefit Plaintiff in any way, shape, or form.

38. Patel also leveraged his relationship with GenHome Mortgage Corporation, which he cultivated while the COO of Plaintiff, to usurp this client relationship from Plaintiff to the newly-founded GenWorks. This obviously benefits Patel personally, to the detriment of Plaintiff.

39. Plaintiff has been damaged, as it lost GenHome Mortgage Corporation's business, which totaled more than $1.5 million in annual revenue for Verity, with annual net profits to Verity of $450,000 - $500,000.

40. Patel's breach of his fiduciary duty has proximately caused damages to Plaintiff. Plaintiff has been irreparably harmed and continues to suffer irreparable harm. Plaintiff accordingly seeks to recover all damages, general and special, resulting from such breaches, which damages exceed the minimum jurisdictional limits of this Court, together with any and all equitable relief to which Plaintiff may be entitled.

41. Patel's breach of fiduciary duties was willful and malicious, entitling ATI to recovery of exemplary damages. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

## **COUNT TWO – BREACH OF DUTY OF LOYALTY**
*(against Patel)*

42. Verity incorporates the preceding paragraphs as though fully set forth herein.

43. Patel, as a high-ranking employee with Verity, owed a duty of loyalty to Plaintiff to, among other things, protect and maintain the confidentiality of Verity's confidential, proprietary, and trade secret information, and to act for the sole financial and corporate benefit of Plaintiff.

44. By creating GenWorks and operating in direct competition with Plaintiff and by misappropriating Verity's confidential, proprietary, and trade secret information while employed by Plaintiff, Patel breached his duty of loyalty owed to Verity.

45. As a result of Patel's breach of his duty of loyalty, Verity has suffered and continues to suffer irreparable harm, as well as monetary damages in excess of this court's jurisdictional minimum, the exact amount to be proven at trial.

## **COUNT THREE – BREACH OF CONTRACT**
*(against Patel)*

46. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

47. Pursuant to the terms of the Agreement, Patel was not to undertake or engage in any other employment, occupation, or business enterprise, let alone that of a direct competitor like GenWorks, without written permission from Plaintiff. Patel never received this permission.

48. As stated above, while Patel was still the COO of Plaintiff, he filed formation paperwork for GenWorks.

49. By forming a new business, during his employment, that was to directly compete with Plaintiff in the same business in which he was employed by Plaintiff, Patel has breached his Agreement.

50. By soliciting Plaintiff's customers, namely GenHome Mortgage Corporation, to not only leave Plaintiff for the newly-created GenWorks, but also by recruiting coworkers at Verity and GenHome Mortgage Corporation employees to found GenWorks, Patel breached his Agreement.

51. Patel also breached his Agreement by serving as an officer and Director of RNRC Enterprise, Inc., another competing business, during his employment with Verity without written permission from Verity.

52. Patel also breached his Agreement by misappropriating and disclosing confidential information provided by Verity and which he promised not to disclose without Verity's permission.

53. As a direct and proximate result of Patel's breaches of the Agreement, Plaintiff has suffered and continues to suffer damages to its current and prospective business in an amount that is difficult to determine but could substantially impact Plaintiff's revenue and business model, with the exact amount of damages to be proven at trial.

54. As a result of Patel's breach of contract, Plaintiff is also entitled to recover its court costs and reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

**COUNT FOUR – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1831 *et seq.***
*(against Patel)*

55. Verity incorporates the preceding paragraphs as though fully set forth herein.

56. Verity's confidential, proprietary, and trade secret information, including statements of work with customer information and pricing, Verity-created standard operating procedures, and checklists created by Verity to guide its operations and business practices. Such information constitutes a "trade secret" under 18 U.S.C. §§ 1831 *et seq*.

57. Verity's trade secret information is used in, or intended for use in, interstate or foreign commerce.

58. Verity's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public or other persons who could obtain economic value from the information.

59. Verity has taken reasonable steps to protect its trade secrets from disclosure, including the trade secrets information possessed and/or stolen by Patel.

60. Verity's reasonable steps to protect its trade secrets from disclosure include, among other things, restricting access to and password-protecting its trade secret information, and only providing access to the trade secret information to need-to-know employees.

61. In connection with his employment with Verity as its COO, Patel had access to and knowledge of nearly all of Verity's trade secrets.

11

62. Both during and after his employment with Verity, Patel had a duty to maintain the secrecy of Verity's trade secrets and to not use them for any purpose other than in connection with the performance of his job duties for Verity.

63. Patel misappropriated Verity's trade secrets by using improper means to acquire Verity's trade secrets by accessing and downloading the information without Verity's knowledge or consent and emailing much of this information to a personal email account, in breach of his duties of confidentiality and loyalty owed to Verity.

64. As a result of Patel's misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer irreparable harm, as well as money damages, the exact amount to be proven at trial.

65. Patel was also unjustly enriched in an amount to be proven at trial.

66. Alternatively, Verity is entitled to recover as damages a reasonable royalty for Patel's unauthorized use and/or disclosure of Verity's trade secrets, with the exact amount to be proven at trial.

67. Patel's misappropriation was willful and malicious, entitling Verity to recovery of exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

**COUNT FIVE – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT**
*(against Patel)*

60. Verity incorporates the foregoing paragraphs as if specifically restated at length herein.

61. As outlined herein, Patel have wrongfully acquired and/or misappropriated trade secrets belonging to Plaintiffs without their express or implied consent in violation of TEX. CIV. PRAC. & REM. CODE § 134A.002.

62. Plaintiff provided Patel with access to its confidential information and trade secrets solely for use in his work for Plaintiff, and any subsequent possession or use of such trade secrets constitutes wrongful misappropriation. Plaintiff has taken reasonable measures to keep its trade secrets confidential and such trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, others. Further, Plaintiff diligently maintains the secrecy and confidentiality of such trade secrets.

63. Patel unlawfully acquired and misappropriated Plaintiff's confidential information and trade secrets and is believed to be using those trade secrets in connection with his work at GenWorks.

64. The confidential, proprietary and trade secret information that Patel is believed to have misappropriated, and is using or threatening to use at GenWorks, a competing business, include several statements of work that contain customer information and pricing, Verity-created standard operating procedures, and checklists created by Verity to guide its operations and business practices. Upon information and belief, Patel knew that he had acquired such information by improper means.

65. Patel has evidenced through his conduct described in detail above that he is using Verity's trade secrets with GenWorks, is intending to use this information at GenWorks, and will inevitably do so, if his unlawful conduct is not restrained. Patel's wrongful acquisition, disclosure, and/or use was without Verity's consent, thereby violating duties owed to Verity.

66. Patel's egregious conduct is the direct and proximate cause of significant and continuing irreparable harm to Plaintiff. By way of example only, Verity is aware that they already have lost one client to GenWorks – GenHome Mortgage Corporation – and that Plaintiff sent confidential pricing information regarding GenHome Mortgage Corporation to his personal

13

email account prior to his resignation. As a result, Plaintiff seeks all recoverable damages for Patel's misappropriation set out in TEX. CIV. PRAC. & REM. CODE § 134A.004, including injunctive and equitable relief under TEX. CIV. PRAC. & REM. CODE § 134A.003, remedies for preservation of secrecy under TEX. CIV. PRAC. & REM. CODE § 134A.006, exemplary damages for willful and malicious misappropriation under TEX. CIV. PRAC. & REM. CODE § 134A.004(b), and attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 134A.005, together with all costs of court.

## COUNT SIX – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS
*(against GenWorks)*

68. Verity incorporates the preceding paragraphs as though fully set forth herein.

69. The Agreement is a contract subject to interference.

70. GenWorks employed and continues to employ Patel in its mortgage servicing business.

71. By its actions, GenWorks either desired to cause a breach of the Agreement or believed a breach of the Agreement was substantially certain to result by offering and continuing to employ Patel in its mortgage servicing business, given that Patel was employed by Verity at the time he founded and began working for GenWorks, in violation of the Agreement.

72. It is not in dispute that GenWorks is aware of the Agreement, as Patel himself is a founder and a Managing Member of GenWorks.

73. GenWorks in allowing Patel to serve in the capacity of Managing Member, during his employment with Verity, interfered with the Agreement.

14

74. Additionally, GenWorks, in allowing Ashok Radhakrishnan, the former Executive Vice President and Chief Delivery Officer of Verity, to serve as a Managing Member caused Patel to breach the Agreement.

75. Accordingly, GenWorks knowingly induced Patel to breach his contractual obligations to Verity.

76. In receiving confidential Verity information from Patel, GenWorks interfered with Patel's obligations under the Agreement.

77. GenWorks's actions have proximately caused damages to Verity in amount in excess of this court's jurisdictional minimum, the exact amount to be proven at trial.

## VI. RELIEF REQUESTED

77. WHEREFORE, Plaintiff prays the Court enter judgment in its favor providing the following relief:

   a. A temporary restraining order stating that:

      i. Patel is prohibited from directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise, engaging in or competing with Plaintiff for any of Plaintiff's existing clients;

      ii. Patel is prohibited from directly or indirectly soliciting or attempting to solicit for hiring or engagement, or directly or indirectly hiring or engaging, any employee, customer, or independent contractor of Plaintiff or its affiliates who is such at the time or has been such at any time within the preceding twelve (12) month period, and from seeking to persuade any such person to discontinue or diminish their relationship with Plaintiff or its affiliates;

  iii. Defendants and all those in active concert with either or both of them are prohibited from directly or indirectly using or disclosing Plaintiff's confidential, proprietary, and/or trade secret information;

  iv. Defendants and all those in active concert with either or both of them are prohibited from destroying, disposing, of or altering: (i) any documents or information that in any way relate to the allegations in the Petition; (ii) any documents or information that are the property of Plaintiff, including but not limited to any proprietary, confidential, and/or trade secret information of Plaintiff; and (iii) any originals, copies, or derivatives of Plaintiff's confidential, proprietary, and/or trade secret information in the possession, custody, or control of either or both Defendants; and

  v. Defendants must produce to Plaintiff's counsel any electronic devices (e.g., USBs, computers, cell phones, etc.) and his or its log-in information for any and all Cloud-based storage services (e.g., DropBox, Google Drive, iCloud, etc.) used by either or both Defendants to access, store, or transmit any of Plaintiff's confidential or trade secret information, so that such devices and storage accounts can be forensically imaged.

b. Following an evidentiary hearing with notice to Defendants, the Court enter a temporary injunction and permanent injunction extending the restrictions provided in the temporary restraining order for two (2) years and suspending the business activities of GenWorks;

c. Actual, compensatory, and exemplary damages against Defendants;

d. Awarding an order of disgorgement against Defendants;

e. Awarding any and all statutory remedies against Defendants;

f. Prejudgment interest and post-judgment interest against Defendants at the maximum rate permitted under applicable law;

g. Awarding costs and reasonable attorneys' fees incurred by Plaintiff; and

h. Any and all other or further relief, under law and/or equity, to which Plaintiff is entitled and which the Court deems proper and just.

Respectfully submitted,

*/s/ Stephen J. Roppolo*
**STEPHEN J. ROPPOLO**
Attorney in Charge
Texas Bar No. 00797939
Federal Bar No. 21694
**FISHER & PHILLIPS LLP**
910 Louisiana Street, Suite 4000
Houston, Texas 77002
Phone: (713) 292-0150
Fax: (713) 292-0151
sroppolo@fisherphillips.com
bguerinot@fisherphillips.com

**ATTORNEY FOR PLAINTIFF**

## VERIFICATION

My name is Sameer Mehta. I am the Founder and Chief Executive Officer of Verity Global Solutions LLC, and I am over the age of eighteen. I am of sound mind to make this Verification. I have reviewed the foregoing assertions in the Original Verified Complaint, and I attest that the facts contained in Paragraphs 9 – 34 of the Original Verified Complaint are within my personal knowledge and are true and correct to the best of my personal knowledge.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the information contained herein is true and correct.

Done this 10th day of January, 2024.

_____
SAMEER MEHTA